968 F.2d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
S. Allen EARLY, Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee, Counter-Claimant,
v.
James L. DENSON; John I. Hickman, Counterclaim Defendants.
 No. 91-1794.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1992.
 
 Before JONES and NORRIS, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 On April 4, 1991, a panel of this court addressed the main issue in this suit. Early v. United States, No. 90-1502, table decision available at 929 F.2d 700, 1991 U.S.App.LEXIS 6652 (6th Cir. Apr. 4, 1991) (unpublished per curiam). S. Allen Early, Jr., an attorney, sued in district court seeking a tax refund and foreclosing thereby the balance of a tax assessment against him arising under provisions of 26 U.S.C. § 6672. We do not herein reiterate all the factual matters set out in the earlier per curiam decision; principally, we address the circumstances of the remand in that case to the district court.
 
 
 2
 After making a number of references to factual determinations by the district court suggesting "that Early was a 'responsible party' " within the meaning of the statute, as was determined by the Internal Revenue Service ("IRS"), the panel stated that one particular finding ("fact Thirty") "appears to be either ambiguous or erroneous."[1] The panel remanded for clarification since "defense counsel [the IRS attorney] conceded at oral argument that there was 'no return of funds' to the city."
 
 
 3
 On remand, the district court entered a short, one-page order, striking finding of fact Thirty because it was "insignificant to the court's ultimate conclusions in this case." With that comment, the district court stood on its previous findings of fact and conclusions of law, and found for the IRS. The district court later denied the plaintiff's motion for reconsideration or clarification, and Early has again appealed. Early attempts to challenge the district court's findings, referred to by the earlier panel, that Early was a "responsible party" who willfully failed to pay $58,876.76 in payroll taxes, along with other officials of Magnum.
 
 
 4
 The district court findings, which we believe certainly by clear inference, were found not to be clearly erroneous by the prior panel. The panel stated:
 
 
 5
 In sum, the trial court found that Early was the "moving force" at Magnum. Although Early did not manage the corporation's daily affairs, the trial court found that he was regularly consulted concerning the financial matters of the corporation, including payroll taxes. In fact, the trial court found that "[Early] possessed significant and continuous financial control over Magnum." J.App. at 113. Id. at 89. The court found that "From as early as September, 1982, to October 1, 1983, [Early] was aware that Magnum owed withholding taxes to the United States but nevertheless allowed other creditors to be preferred over the United States." Id. at 113.
 
 
 6
 The above findings by the district court all suggest that Early was a "responsible party."
 
 
 7
 Slip op. at 4, 5.
 
 
 8
 In addition, Early was the incorporator of Magnum, its landlord, its secretary-treasurer, a director, and had authority to sign checks. He was a major part of significant corporate transactions and negotiations with Magnum's chief "client," the city of Detroit. He earned in excess of $50,000 a year from Magnum, despite its precarious financial condition. Magnum's vice president and general manager, Hickman, indicated that he was employed by Early and did not disobey his orders. Hickman advised Early that if Magnum signed an agreement with the city for a major reduction in price, Magnum would not be able to pay its suppliers, make payroll, or pay its taxes. Hickman testified that Early told him to sign the agreement and that he (Early) would "take care of it."
 
 
 9
 Before our prior remand, the panel stated that "finding of fact Thirty is simply not clear. It may be that this finding bore very little on the trial court's ultimate conclusions." Slip op. at 5 (emphasis added).
 
 
 10
 The trial court, upon remand, made it clear that fact Thirty had little or nothing to do with its ultimate conclusion and decision that Early was a "responsible party" under the statute. In this suit for a refund, plaintiff bore the burden or assumed the responsibility of overcoming the correctness of the IRS assessment and determination of liability. See Collins v. United States, 848 F.2d 740, 742 (6th Cir.1988) (taxpayer must prove he is not a responsible party who willfully failed to pay taxes). The district court's finding that Early was a responsible party is subject to a clearly erroneous standard of review. See Slip op. at 4; Gephart v. United States, 818 F.2d 469, 473 (6th Cir.1987). In this case, the district court was not clearly in error under the circumstances.
 
 
 11
 The dissent emphasizes only the one cryptic and ambiguous statement in the prior panel opinion that, absent fact Thirty which was later deemed to be "insignificant to the [district court's] ultimate conclusion," the " 'responsibility' finding may not stand on firm footing." (emphasis added). As we have pointed out, the prior panel indicated that fact Thirty needed to be clarified because there may have been "no return of funds to the city." We have concluded that based on the other facts found by the district court and confirmed by the earlier panel, the plaintiff has failed to demonstrate that the IRS was in error in determining that Early was a responsible party and had significant control over the corporation in question. Specifically, Early had the ability to direct the officers to disburse the corporation's funds to other creditors before the IRS.
 
 
 12
 For the reasons stated, we accordingly AFFIRM the decision of the district court.
 
 
 13
 NATHANIEL R. JONES, Circuit Judge, dissenting.
 
 
 14
 The majority holds that the district court's factual findings support the conclusion that Early is a "person required to collect, truthfully account for, and pay over any tax imposed by this title," I.R.C. § 6672 (1988), or a "responsible person," see McGlothin v. United States, 720 F.2d 6, 8 (6th Cir.1983) (citing Mueller v. Nixon, 470 F.2d 1348, 1350 (6th Cir.1972), cert. denied, 412 U.S. 949 (1973)). I respectfully dissent.
 
 
 15
 As noted by the majority, this case has been here once before. At that time, I was a member of the panel, which remanded because finding of fact number Thirty was unclear. Early v. United States, No. 90-1502, at 5 (6th Cir. Apr. 4, 1991) (per curiam). The panel noted that "[w]hether one is a 'responsible person' is essentially a factual inquiry." Id. at 4 (citing Gephart v. United States, 818 F.2d 469, 473 (6th Cir.1987)). "The key inquiry is whether the person had significant, as opposed to absolute, control over the disbursement of funds." Id. In this context, the panel stated that "[a]bsent finding Thirty, a finding of 'responsibility' may not stand on firm footing." Id. at 5.
 
 
 16
 On remand, the district court determined that factual finding number Thirty was insignificant to the court's conclusion that Early was a "responsible person" for purposes of I.R.C. § 6672, and the court ordered number Thirty stricken. Early then filed a motion for reconsideration or clarification indicating that if the district court could indicate the reasons for finding Early to be in significant control of Magnum Oil's finances--a fact that Early believed he had successfully contended was not apparent absent erroneous finding number Thirty--such clarification might eliminate the need for appellate review. The district court denied the motion. Thus, in the instant appeal, Early argues once again that he is not a responsible person within the meaning of the tax statute, because absent factual finding number Thirty, the district court has not shown that he had significant control over the disbursement of funds.
 
 
 17
 The United States offers several theories in support of the district court's conclusion that Early was a responsible party. Nonetheless, it never really comes to grips with the importance of factual finding number Thirty. That finding constituted the only evidence that Early had ever been involved with the disbursement of Magnum Oil's funds. Under that finding, Early, by approving the city contract, would have been ordering funds, previously paid, to be returned to the city. In fact, however, Early's approval of the contract merely changed the amount of an account receivable from the city--that is, the contract merely stated a lower price for the oil.
 
 
 18
 If the prior panel had thought that this case did not turn on finding number Thirty, it simply could have noted that the finding was clearly erroneous, but that the remainder of the record supported Early's status as a responsible person. In my view, the panel remanded because, absent finding number Thirty, the record does not contain any evidence that Early actually disbursed funds, ordered the disbursement of funds, or even established the priority for the disbursement of funds.
 
 
 19
 Absent finding number Thirty, the record shows that Early dealt with the city of Detroit concerning the fuel oil contract and gave legal advice, upon request, to Hickman. Although Early had signed the bank's signatory card, Magnum Oil's checks required more than one signature, and Early never actually signed any checks. Furthermore, Early did not manage employees, deal with the company's general creditors, or involve himself in the actual business of buying, selling, or delivering oil.
 
 
 20
 In the government's view, "[t]he bottom line here is that, although taxpayer [Early] knew the withheld taxes were not being paid over to the Government, taxpayer did nothing to rectify the situation, and, in fact, accepted payments from the corporation for his own benefit." Br. of United States at 36. This observation, however, is not the bottom line; rather, this observation merely satisfies the element of willfulness. The government must further establish that Early was a responsible person. Any employee, for example, would satisfy the element of willfulness by failing to report a paycheck that does not reflect withholding. The crucial inquiry, however, is whether that employee is responsible for the withholding in the first place, not whether that employee could have acted to rectify the situation. The government fails to recognize this distinction. See id. at 34 n. 9 (conceding that knowledge of failure to withhold, alone, is not sufficient for a § 6672 violation, but arguing, in circular fashion, that Early should have acted on the knowledge).
 
 
 21
 In the final analysis, the majority relies upon Early's alleged "ability to direct the officers to disburse the corporation's funds to other creditors before the IRS." Majority op. at 5. This statement is not only inaccurate based upon the record, but it further illustrates the importance of finding number Thirty. The majority reasons that "Hickman advised Early that if Magnum signed an agreement with the city for a major reduction in price, Magnum would not be able to pay its suppliers, make payroll, or pay its taxes." Id. at 3. Absent finding number Thirty, however, Early's approval of the agreement with the city did not result in a return of funds--which otherwise could have been paid to other creditors--to the city. Instead, approval of the contract resulted in a prospective inability to meet Magnum's obligations. As Magnum became short of funds, Early did not establish the priority system that paid certain creditors before the IRS. In fact, Early was himself a general creditor, yet he was unable to obtain priority for the payment of money due him, which expressly contradicts the majority's assertion.
 
 
 22
 The sine qua non of the § 6672 responsible-person inquiry is whether the person had significant control over the disbursement of funds. Although Early had significant involvement in negotiating with the city, the record does not support the view that he was in any way involved in the disbursement of funds. Accordingly, I would reverse the district court's judgment.
 
 
 
 [1]
 The particular finding was that the "price reduction was to be in the form of return of funds to the city" of Detroit, which city had entered into a contract with the corporation, Magnum Oil Company ("Magnum")